Constance Visceglia v. Commissioner. Joseph Visceglia v. Commissioner.
Visceglia v. Commissioner
Docket Nos. 71139, 71140.
United States Tax Court
T.C. Memo 1961-276; 1961 Tax Ct. Memo LEXIS 77; 20 T.C.M. (CCH) 1444; T.C.M. (RIA) 61276; September 29, 1961
*77 Dean P. Kimball, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: These proceedings involve deficiencies in income tax and additions to tax for fraud as well as other additions for the taxable years 1945, 1946, and 1947, as follows: Deficiencies
Additions to Tax - I.R.C. 1939
Sec. 294
Sec. 294
Docket No.
Year
Income Tax
Sec. 293(b)
(d)(2)
(d)(1)(A)
71139
1946
$ 6,571.83
$ 3,285.92
$ 394.31
$591.48
71139
1947
20,443.11
10,221.56
1,482.75
71140
1945
2,166.60
1,083.30
129.61
194.43
71140
1946
6,087.57
3,043.79
365.25
547.88
71140
1947
2,393.81
1,196.91
197.56
296.35
The issues are whether petitioners filed returns understating their net income for each of the years involved and whether petitioners' conduct was fraudulent for each of such years. Findings of Fact Petitioner Joseph Visceglia filed Federal income tax returns for the taxable years 1945, 1946, and 1947 with the collector of internal revenue for the fifth district of New Jersey on May 16, 1946, May 14, 1947, and May 14, 1948, respectively, wherein he disclosed the following *78 amounts of gross income and tax liability: Year
Gross Income
Tax Liability
1945
$2,600.00
$ 56.00
1946
2,600.00
0
1947
5,000.00
898.80
Petitioner Constance Visceglia filed Federal income tax returns for the taxable years 1946 and 1947 with the collector of internal revenue for the fifth district of New Jersey on June 16, 1947 and May 14, 1948, respectively, wherein she disclosed the following amounts of gross income, deductions, net income or loss, and tax liability: Net
Gross
Deduc-
Income
Tax
Year
Income
tions
or Loss
Liability
1946
$32,654.28
$32,967.50
$ (313.22)
None
1947
21,035.45
1,341.75
16,693.70
$5,269.51
(after
exemptions)
The notices of deficiency herein were mailed on September 13, 1957. Joseph Visceglia described his occupation on his 1946 and 1947 tax returns as that of manager and executive, respectively. Constance Visceglia described her occupation on her 1947 tax return as realty and trading. The gross income reported by Joseph Visceglia on his tax returns for all three taxable years was reported under the heading "wages, salaries * * * and other compensation *79 received * * * before payroll deductions" from United Security Associated Warehouses, Inc., even dollar amounts being stated as such income, as indicated above, namely, $2,600, $2,600, and $5,000, respectively. Constance Visceglia on her 1946 tax return on page 1 disclosed no gross income although on page 2 she disclosed gross rental income of $28,000 from a "brick building." On a schedule attached to that return she stated a gross income of $32,654.28 without any designation as to the source or character. On her 1947 return she stated a gross income on page 1 of $21,035.45 derived, as indicated on page 2, from net income from rents of $24,668.48 on "warehouse building" less a loss of $3,633.03 shown on Schedule C representing loss from "business or profession." Joseph Visceglia is an intelligent business man. He was in the moving van business which he conducted through various corporations or organizations. He also owned and operated property. The United Security Associated Warehouses, Inc., was one of the corporations through which he operated. Abco was another. Ace Furniture Company was a trading name used by petitioner Constance Visceglia in conducting the business of selling *80 furniture. Petitioners kept no regular books of account nor formal records. The only records which they had with respect to their transactions were bank statements and cancelled checks. Petitioners had accounts in savings banks, including Clinton Trust Company (now Chase Manhattan Bank), Garden State National Bank, National State Bank of Newark (Federal Trust Company), Peoples Trust Company, and Chemical Bank New York Trust Company. There were two bank accounts in the name of United Security Associated Warehouses, Inc., and the bank statements for one of these accounts were sent to the petitioners' home address, 440 Ogden Avenue, Teaneck, New Jersey. The deposits in this latter bank account, bank statements for which were sent to the home address, were not incorporated in the corporate records of United Security Associated Warehouses, Inc., and nowhere on the corporate tax returns or those of petitioners was the income reflected in this account reported. The account of the Ace Furniture Sales Company at Clinton Trust Company was in the name of petitioner Constance Visceglia (also known as Connie Putignano, her maiden name) and both petitioners had the right to sign checks *81 on this account. Joseph Visceglia had an account at the Garden State National Bank, Account No. 12281, which carried the legend "in trust for Mary, Dorothy, Diego, Joseph and Carol Anne Visceglia" but there was no written trust with respect to this account. This type of account does not carry written trust agreements and Joseph Visceglia had unlimited power of withdrawal with respect thereto. Constance Visceglia received income during the taxable years 1946 and 1947 principally from rent but she also derived income from Ace Furniture Sales Company from the sale of furniture. Constance Visceglia also received interest income in both 1946 and 1947 from purchase money mortgages owned and held by her, said interest income being received by her in the following amounts: Year
Amount
1946
$1,018.51
1947
1,281.26
Petitioner Joseph Visceglia also received interest income which he did not report in each of the three taxable years as follows: Year
Amount
1945
$190.24
1946
324.95
1947
292.26
Constance Visceglia made the following bank deposits in 1946: Name of Bank
Amount
Peoples Trust Company, Teaneck,
New Jersey
$ 7,663.08
Clinton Trust Company, New York,
New York (Now Chase Manhattan
Bank) (Ace Furniture Sales Com-
pany account)
65,268.22
*82 Deposits were made either by or on behalf of petitioner Joseph Visceglia as follows: Year
Name of Account
Name of Bank
Amount
1945
United Security Associated Warehouses,
Chemical Bank &
Inc., 440 Ogden Avenue Teaneck, N.J.
Trust Company
$ 9,940.68
1946
United Security Associated Warehouses,
Chemical Bank &
Inc., 440 Ogden Avenue Teaneck, N.J.
Trust Company
11,081.28
1947
United Security Associated Warehouses,
Chemical Bank &
Inc., 440 Ogden Avenue Teaneck, N.J.
Trust Company
1,006.36
Deposits were made by Constance Visceglia in Peoples Trust Company of Teaneck, New Jersey, in 1947 in the amount of $6,140.47. Deposits were made by Joseph Visceglia in Federal Trust Company, Newark, New Jersey, as follows: Year
Amount
1945
$3,145.76
1946
5,463.03
1947
9,274.68
Deposits were made by Joseph Visceglia in the Clinton Trust Company, New York, New York (now Chase Manhattan Bank) as follows: Year
Amount
1946
$5,863.09
1947
9,699.77
Deposits were made by Joseph Visceglia in the Garden State National Bank, Teaneck, New Jersey, in his name labeled "In Trust for Mary, Dorothy, Diego, Joseph and *83 Carol Anne Visceglia," Account No. 12281, as follows: Year
Amount
1945
$2,225.90
1946
4,532.04
1947
5,638.54
Deposits were made by Constance Visceglia in 1947 in the Clinton Trust Company, New York for the account labeled "Ace Furniture Sales Company" in the amount of $82,155.08. After crediting Constance Visceglia for the year 1946 with gross income of $32,654.28 shown on her return and after crediting her with identified check exchanges, the total unexplained deposits representing part of her additional income for that year was $31,519.49. After crediting Constance Visceglia for the year 1947 with gross rental income of $35,333.38 shown on her return, and after crediting her with identified exchanges, the total unexplained deposits representing part of her additional income for that year was $36,219.72. After similarly crediting Joseph Visceglia for the year 1945, his total unexplained deposits for that year were $15,312.34. After similarly crediting Joseph Visceglia for the year 1946, his total unexplained deposits for that year were $26,939.44. Ofter similarly crediting Joseph Visceglia for the year 1947, his total unexplained deposits for that *84 year were $25,619.35. Joseph Visceglia filed a net worth statement with the Internal Revenue Service in connection with the consideration of these cases wherein he stated that his living expenses were as follows: Year
Amount
1945
$1,300.00
1946
1,300.00
1947
3,360.00 He had expenses for life insurance and private schooling in those years which in themselves were greatly in excess of his claimed living expenses. He paid the following amounts as life insurance premiums in the said years: Year
Amount
1945
$1,969.27
1946
2,212.45
1947
3,038.49 In addition, in 1947 he paid Mary Mount School $897.50 for educational expenses for one or more of his children. Constance Visceglia had unreported income as follows: Income
Unex-
from
plained
Year
Interest
Rents
Deposits
Total
1946
$1,018.51
$19,893.55
$ 152.84
$21,064.90
1947
1,281.26
4,408.17
26,647.96
32,337.39
Joseph Visceglia had unreported income as follows: Unexplained
Year
Interest
Deposits
Total
1945
$190.24
$ 8,096.45
$ 8,286.69
1946
324.95
16,157.44
16,482.39
1947
292.26
7,476.02
7,768.28
*85 Such unexplained deposits consisted mainly of income derived by petitioners from their usual income sources, namely, from the moving van business in the case of Joseph Visceglia and from the furniture business and rental activities in the case of Constance Visceglia. Petitioners filed false and fraudulent returns for all of the years involved with the intent to evade taxes. Part of the deficiencies for all of the years involved is due to fraud with the intent to evade taxes. Opinion There having been no evidence offered to the contrary, petitioners, who did not appear at the trial, have, of course, failed to sustain their burden of proof as to the deficiency in tax. Our ultimate findings dispose of the fraud issues. While respondent has the burden on these issues, he has shown, as to both petitioners, repeated and apparently systematic failure to report large items of income, and unexplained bank deposits, of which these could have been the source. This is strong and adequate evidence of fraud, , especially in the absence of any satisfactory explanation. . Both petitioners *86 were successful business people, so that any such explanation as lack of understanding or innocent mistake would be unconvincing even if resorted to. , affirmed sub nom. (C.A. 1, 1950). In fact, failure to enter some of the items on the business books is itself one of the indicia of a fraudulent intent. Respondent appears to have extended to petitioners every reasonable opportunity to supply him with the correct information as to their true income, and to the extent that their statements were substantiated, to have made the necessary adjustments. We think we can now be satisfied that his conclusions were correct. (C.A. 3, 1952), affirming a Memorandum Opinion of this Court. Decisions will be entered under Rule 50.